Nathan D. Ellis
Ellis Law, PLLC
2047 North Last Chance Gulch #482
Helena, Montana 59601
(406) 475-5900
nate@ellis.law
*Attorney for Dakota Wheeler*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DAKOTA WHEELER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>　　　　Defendant | Case No.: CV-25-00103-GF-BMM<br><br>**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

I. **Introduction**

Plaintiff Dakota Wheeler respectfully submits this Response Brief in Opposition to Defendant U.S. Immigration and Customs Enforcement's Motion to Dismiss. This case presents critical constitutional and equitable issues arising from Dakota's unique circumstances as an individual brought to the United States as a minor under the Visa Waiver Program (VWP). Despite the government's assertion that this Court lacks subject matter jurisdiction under 8 U.S.C. § 1252(g) and that Dakota waived his right to contest removal under the VWP waiver provision, these

arguments fail to account for the narrow scope of the jurisdictional bar, the heightened due process protections owed to minors, and the substantial ties Dakota has developed over more than a decade of residence in Montana.

Dakota is not directly challenging the execution of his removal order, but rather the constitutional validity of applying the VWP waiver to someone who entered as a minor and lacked capacity to knowingly and voluntarily waive his rights. This constitutional challenge constitutes a general collateral challenge to unconstitutional practices that falls outside the narrow scope of § 1252(g) as interpreted by the Supreme Court. Moreover, Dakota's long-term residence and family ties warrant full judicial review and protection under the Due Process Clause. For these reasons, the Court should deny the government's motion to dismiss and allow this case to proceed on the merits.

## II.     Factual Background

Dakota Wheeler was brought to the United States at age 15 under the Visa Waiver Program (VWP) on November 5, 2014, accompanied by his mother. (Def. Br. 2, ECF No. 6.) While his mother subsequently obtained lawful permanent resident status in 2022, Dakota himself was left without lawful immigration status due to no fault of his own as he was merely 15 years old. (*Id.*) He has resided continuously in Montana for approximately 11 years. (*Id.*) Prior to meeting his fiancé, Dakota was previously in an abusive relationship with an older woman who used

threats of deportation as a means to intimidate and control him, effectively weaponizing his immigration status against him. (Compl. 1, ECF No. 1.) This history of abuse and coercion has caused lasting emotional and psychological harm. (*Id.*)

III. Argument

    a. The Court Has Subject Matter Jurisdiction to Hear Dakota's Constitutional Claims

        i. Section 1252(g) Has a Narrow Scope That Does Not Bar Dakota's Constitutional Claims

The government argues that this Court lacks subject matter jurisdiction under 8 U.S.C. § 1252(g), which bars review of "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." However, the Supreme Court has explicitly rejected the notion that § 1252(g) serves as a broad jurisdictional bar to all deportation-related claims.

In *Reno v. American-Arab Anti-Discrimination Committee*, the Supreme Court held that § 1252(g) "does not strip jurisdiction over 'all deportation-related claims'" but rather applies only to "three discrete actions" - the Attorney General's "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." *Ibarra-Perez v. United States*, 24-631 (9th Cir. Aug 27, 2025), 10. The Court emphasized that § 1252(g) "is much narrower" than a comprehensive jurisdictional bar. *Id.*

PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 3

The Supreme Court explicitly rejected the interpretation of § 1252(g) as a "zipper clause" that would bar judicial review in all deportation cases, stating that "what § 1252(g) says is much narrower." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Court explained that it would be "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

This narrow interpretation has been consistently reaffirmed by the Ninth Circuit. In *Ibarra-Perez v. United States*, the court reiterated that "Section 1252(g)'s scope is governed by its text" and that it "does not strip jurisdiction over 'all deportation-related claims.'" *Ibarra-Perez v. United States*, 24-631 (9th Cir. Aug 27, 2025), 34. Similarly, in *Pichardo v. INS*, the court noted that *Reno* "does not preclude our review of the order of removal in this case" because the challenge was not to one of the three discrete actions covered by § 1252(g). *Pichardo v. INS*, 216 F.3d 1198, 1200, n. 3, (9th Cir. 2000).

Dakota's constitutional claims do not challenge any of the three discrete actions covered by § 1252(g). Rather, he challenges the constitutional validity of applying the VWP waiver to his unique circumstances as someone who entered as a minor. This type of constitutional challenge falls outside the scope of § 1252(g).

Courts have consistently recognized that § 1252(g) does not bar "general collateral challenges to unconstitutional practices and policies used by the agency."

PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 4

*Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). Dakota's challenge to the application of the VWP waiver to minors constitutes precisely such a collateral challenge to an unconstitutional practice. As the Ninth Circuit has recognized, § 1252(g) does not preclude review when plaintiffs have not "made any allegations as to the merits of the decision to execute removal orders against them, except to the extent necessary to substantiate their due process claims." *Id.* The Ninth Circuit went on to state that "Although the constitutional violations ultimately may have led to the plaintiffs' erroneous deportation, the resulting removal orders were simply a consequence of the violations, not the basis of the claims." *Id.*

The Supreme Court has consistently distinguished between "direct review of individual denials" of applications and "general collateral challenges to [unlawful] practices and policies." *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1002 (9th Cir. 2024). Dakota's challenge falls squarely within the latter category, as he is not directly challenging the execution of his removal order but rather the constitutional validity of applying the VWP waiver to someone who entered as a minor.

### ii. Federal Courts Retain Jurisdiction Over Constitutional Claims

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 USCS § 1331. This

grant of jurisdiction is not automatically displaced by § 1252(g)'s limited restrictions. Courts have recognized that "28 U.S.C.S. § 1331 would provide jurisdiction over a non-statutory cause of action for declaratory and equitable relief against alleged unconstitutional conduct" even in the immigration context. *Khachatryan v. Blinken,* 4 F.4th 841, 849, n.4 (9th Cir. 2021). Importantly, "the courts will be open to review of constitutional claims, even if they are closed to other claims." *Id.*

The Ninth Circuit has recognized that a court "is not precluded from ruling on constitutional challenges to deportation procedures." *Jimenez-Angeles v. Ashcroft,* 291 F.3d 594, 599 (9th Cir. 2002). This principle is particularly important in cases involving substantial due process concerns, as courts have consistently held that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with the country." *United States v. Verdugo-Urquidez,* 494 U.S. 259, 271 (1990).

The Ninth Circuit has specifically held that § 1252(g) "does not prevent the district court from exercising jurisdiction over the plaintiffs' due process claims" when those claims "do not arise from a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien,' but instead constitute 'general collateral challenges to unconstitutional practices and policies used by the agency.'" *Walters v. Reno*, 145 F.3d 1032, 1052

(9th Cir. 1998). Dakota's claims fall precisely within this category of general collateral challenges to unconstitutional practices.

District courts also retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention if they are sufficiently "independent of the merits of the petition for review." *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011). Dakota's constitutional challenge to the application of the VWP waiver to minors is independent of the merits of his removal order and thus falls within this jurisdictional grant.

### iii. Due Process Concerns Support Jurisdiction Over Dakota's Claims

Dakota's claims implicate significant due process concerns that warrant judicial review. The Supreme Court has recognized that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). Further, Courts have recognized that "the relief that a non-citizen seeks from immigration authorities is the last resort that a non-citizen has before being returned, against his will, to a country where he may have no ties or family." *Garfias-Rodriguez v. Holder,* 702 F.3d 504, 534 (9th Cir. 2012). Given these high stakes,

"non-citizens in removal hearings are entitled to due process protections under the Fifth Amendment." *Id.*

Likewise, the Ninth Circuit has recognized that "[t]he private liberty interests involved in deportation proceedings are indisputably substantial" and that alien minors "in deportation proceedings are entitled to the fifth amendment guaranty of due process." *Pleitez v. Barr,* 938 F.3d 1141, 1146 (9th Cir. 2019) (citations omitted). Importantly, "parental notification requirements…further implicate the due process rights of juveniles, as minors generally cannot appreciate or navigate the rules of or rights surrounding final proceedings that significantly impact their liberty interests." *Id.*

The Supreme Court has recognized that a child's age is "far 'more than a chronological fact'" and "generates commonsense conclusions about behavior and perception." *J. D. B. v. North Carolina,* 564 U.S. 261, 272 (2011) (citations omitted). The Supreme Court has further recognized that "imposing disabilities on the child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing." *Plyler v. Doe,* 457 U.S. 202, 219 (1982).

This understanding is particularly relevant to Dakota's case, as he entered the United States at age 15 under the VWP and could not have fully appreciated the legal consequences of the program's waiver provisions. As such, Dakota's challenge raises

serious questions about whether a minor can knowingly and voluntarily waive significant rights under the VWP.

### b. The VWP Wavier Provision Cannot Be Enforced Against Dakota Who Entered as a Minor

#### i. Constitutional Protections for Minors

The Supreme Court has consistently recognized that children are different from adults in legally significant ways, including their capacity to understand and waive constitutional rights. In *J.D.B. v. North Carolina*, the Court acknowledged that a child's age "is far 'more than a chronological fact'" and "generates commonsense conclusions about behavior and perception" that "apply broadly to children as a class." *J. D. B. v. North Carolina,* 564 U.S. 261, 272 (2011) (citations omitted). These conclusions are "self-evident to anyone who was a child once himself, including any police officer or judge." *Id.*

The Court has further recognized that children have substantial liberty interests that are protected by the Constitution. In *Reno v. Flores*, the Court noted that "children, too, have a core liberty interest in remaining free from institutional confinement" and that a "child's constitutional 'freedom from bodily restraint' is no narrower than an adult's." *Reno v. Flores,* 507 U.S. 292, 316 (1993). These protections are particularly important in the context of immigration proceedings,

where the liberty interests at stake are "indisputably substantial." *Pleitez v. Barr,* 938 F.3d 1141, 1145 (9th Cir. 2019).

### ii. Knowing and Voluntary Waiver Standard

For a waiver of constitutional rights to be valid, it must be knowing, intelligent, and voluntary. This principle applies with particular force to minors in immigration proceedings. The Ninth Circuit has established that "while a minor can waive the right to counsel in a deportation hearing, that waiver must be knowing, intelligent, and voluntary." *Lin v. Ashcroft,* 377 F.3d 1014, 1032-1033 (9th Cir. 2004). This determination "should take into account the minor's age, intelligence, education, information, and understanding and ability to comprehend." *Id.*

The Supreme Court has likewise recognized that minors may lack the capacity to fully understand and appreciate the consequences of waiving their rights. In *Fare v. Michael C.*, the Supreme Court established that when determining whether a juvenile has waived their rights, courts must employ a "totality-of-the-circumstances approach" that "includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.,* 442 U.S. 707, 726 (1979).

While Defendant argues that the courts typically do not entertain challenges concerning capacity or voluntariness to execute the waiver as there is typically a lack

PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 10

of prejudice, the cases relied upon do not address the effect of minority on the validity of the waiver, nor do they address impossibilities imposed upon minor children. When Dakota entered the United States at age 15, he lacked the capacity to knowingly and voluntarily waive his constitutional rights. There is no evidence that Dakota, at age 15, had the capacity to understand the complex legal consequences of the VWP waiver, which purports to waive all rights to contest removal, except through asylum. Likewise, there is no evidence that Dakota had any say in the matter. Further, unlike in *Bayo v. Napolitano*, 593 F.3d 495 (7th Cir. 2010) & *Bradley v. Atty. Gen. of U.S.*, 603 F.3d 235 (3rd Cir. 2010), Dakota was not presented with a choice of whether to sign the waiver or return to the UK, nor was he permitted to depart for the UK upon the expiration of his permitted stay. He was merely a child who did as his parent instructed. Unlike the typical situation, Dakota has been deprived of his due process rights without a knowing and voluntary waiver of said rights, while being placed in an impossible situation through no fault of his own. Dakota had no choice in the matter, and as such, it cannot be said that he would have been in the same position had he refused to waive his rights under the VWP as this was never a possibility.

### iii. Enforcing the Waiver Would Violate Fundamental Fairness

Enforcing the VWP waiver against Dakota would violate fundamental principles of fairness and due process. In *Plyler v. Doe*, the Supreme Court

recognized that children should not be penalized for the actions of their parents, stating that "[visiting]…condemnation on the head of an infant is illogical and unjust" and that "imposing disabilities on the…child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing." *Plyler v. Doe,* 457 U.S. 202, 221 (1982) (citations omitted). The Court further noted that "no child is responsible for his birth and penalizing the child is an ineffectual -- as well as unjust -- way of deterring the parent." *Id.* This reasoning applies with equal force to Dakota, who entered the United States as a minor and should not be penalized for decisions made by his mother.

The gravity of immigration proceedings cannot be overstated, as they represent "the last resort that a non-citizen has before being returned, against his will, to a country where he may have no ties or family, or where he may be subjected to imprisonment, torture, or certain death." *Garfias-Rodriguez v. Holder,* 702 F.3d 504, 534 (9th Cir. 2012). Recognizing this gravity, courts have "asserted numerous times that non-citizens in removal hearings are entitled to due process protections under the Fifth Amendment." *Id.*

The Due Process Clause contains both substantive and procedural components. *Agyeman v. INS Asst. Dist. Dir. Coachman,* 74 F. App'x 691, 693 (9th Cir. 2003). Enforcing the VWP waiver against Dakota would violate both components:

procedurally, by enforcing a waiver that was not knowing and voluntary; and substantively, by disregarding his substantial ties to the United States and his established family interests.

### c. Dakota Satisfies the Standard for Maintaining the Temporary Restraining Order

The Court has already granted a Temporary Restraining Order preventing Dakota's removal or transfer from Montana. This order should be maintained because Dakota satisfies the standard for preliminary injunctive relief.

In the Ninth Circuit, there are two alternative sets of criteria for determining whether to grant a preliminary injunction. "Under the traditional criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to [the] plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Raich v. Gonzales,* 500 F.3d 850, 858-859 (9th Cir. 2007). Alternatively, a preliminary injunction may be granted if the plaintiff demonstrates "either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* These two formulations "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

Dakota has demonstrated a probability of success on the merits of his constitutional claims, as discussed above. He has also shown the possibility of irreparable injury if removed, including separation from his pregnant partner, loss of access to counsel, and re-traumatization based on his history of victimization.

Even if the Court finds that Dakota's probability of success is lower, the balance of hardships tips sharply in his favor. Dakota faces severe and irreparable harm if removed, while the government faces minimal hardship from maintaining the status quo pending resolution of this case. The public interest also favors maintaining the TRO, as it ensures that substantial constitutional questions are fully addressed before potentially irreversible action is taken.

## IV. Conclusion

For the foregoing reasons, Dakota Wheeler respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety. The Court has jurisdiction to hear Dakota's constitutional claims, which fall outside the narrow scope of § 1252(g). The VWP waiver cannot be enforced against Dakota who entered as a minor and lacked capacity to knowingly waive his rights. Dakota's substantial ties to the United States over his 11-year residence, including his relationship with his pregnant partner who is a lawful resident, warrant judicial review and protection under the Due Process Clause.

The Court should maintain the Temporary Restraining Order preventing Dakota's removal or transfer from Montana pending resolution of this case, as Dakota has demonstrated both a likelihood of success on the merits and that the balance of hardships tips sharply in his favor. Removal would cause irreparable harm by separating Dakota from his family and depriving him of access to counsel during this critical time.

Dated December 2, 2025.

                Ellis Law, PLLC

                /s/ Nathan D. Ellis
                  Nathan D. Ellis
                  *Attorney for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Response Brief in Opposition is in compliance with Local Criminal Rule 47.2. The brief's line spacing is double spaced, and is proportionately spaced, with a 14-point font size and contains less than 6,500 words. (Total number of words: 3,066 excluding caption, tables, and certificates.)

Dated December 2, 2025.

Ellis Law, PLLC

/s/ Nathan D. Ellis
  Nathan D. Ellis
  *Attorney for Plaintiff*

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on December 2, 2025, a copy of the foregoing document was served on the following persons by the following means:

<u>1 & 2</u> CM-ECF
<u>       </u>Hand Delivery
<u>       </u>Mail
<u>       </u>Overnight Delivery Service
<u>       </u>Fax
<u>       </u>E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. JOHN M. NEWMAN
   Assistant United States Attorney
   United States Attorney's Office
   Counsel for the United States of America


/s/ Nathan D. Ellis